FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ JAN 04 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

CANUTE MURRAY,

                                  Plaintiff,

- against -

CITY OF NEW YORK, POLICE OFFICER ALEXANDER ZELEDON SHIELD NO. 17073, POLICE OFFICER VINCENZO DIMARTINO SHIELD NO. 19954,

                                  Defendants.

------------------------------------------------------------------ x

COMPLAINT AND JURY DEMAND

Docket No.

ECF CASE

CV 11 - 0034

ROSS, J.  REYES, M.J.

Plaintiff Canute Murray by his attorneys, Stoll, Glickman & Bellina, LLP, for his complaint alleges as follows:

### PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 for the violation of his Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2. The claim arises from a December 19, 2009 incident in which defendant NYPD officers from the 75th precinct responded to plaintiff's 911 call asking for help with a dispute between his adult son and daughter. When plaintiff told the defendants their assistance was no longer necessary, defendants told plaintiff, a 62 year-old man, to "shut the fuck up", pushed him over the banister of his stairway and handcuffed him. Defendants falsely accused plaintiff of disorderly conduct and resisting arrest and plaintiff spent 33 hours in jail before being released. Plaintiff is still fighting the charges of disorderly conduct and resisting arrest.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8. Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City

was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10. POLICE OFFICER ALEXANDER ZELEDON SHIELD NO. 17073, was, at all times here relevant, a police officer of the NYPD at the 75th precinct and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Zeledon was plaintiff's "arresting officer" and was under the command of the 75th precinct. Defendant Zeledon is sued in his individual capacity.

11. POLICE OFFICER VINCENZO DIMARTINO SHIELD NO. 19954, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant DiMartino was under the command of the 75th precinct and is sued in his individual capacity.

12. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

13. Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

14. On December 19, 2009 at approximately 10:30 a.m., plaintiff, a 62 year-old

3

man, was inside of his home at 300 Bradford Street in Brooklyn, New York. Plaintiff has owned this building for almost 20 years. He lives in the third floor apartment that he sometimes shares with his adult son and daughter. A tenant, Ms. Lynette Gregory, rents the first floor apartment and another tenant, Lisa Porter, rents the second floor apartment.

15. Plaintiff's son and daughter got into a dispute that morning which resulted in plaintiff's son breaking a television set. Plaintiff called 911 for help because he wanted his son to leave his apartment.

16. Plaintiff's son left the apartment after 911 was called but before any police officers arrived.

17. When defendants knocked on plaintiff's apartment door, his son was already gone. Plaintiff told the officers their assistance was no longer required.

18. Defendants told plaintiff to "shut the fuck up". Plaintiff told them to leave his house and that he felt disrespected.

19. One officer defendant grabbed plaintiff's arm, pulled him close, pushed and bent him over the banister of his stairway, where they put handcuffs on him. Both officers restrained him over the banister while he was placed in handcuffs.

20. Ms. Gregory, plaintiff's tenant, and plaintiff's daughter asked the officers repeatedly what they were doing and why were they handcuffing plaintiff. Defendants told them to go inside or else they would be arrested.

21. Plaintiff asked why he was being handcuffed. As defendants took him downstairs to the police vehicle, he complained several times that the handcuffs were too tight.

22. Defendants falsely accused plaintiff of disorderly conduct and resisting arrest.

Plaintiff spent 33 hours in jail before being released.

23. Plaintiff sought treatment for neck and lower back pain at his primary care physician, Dr. Abraham Demoz, MD on December 29, 2009. Plaintiff had previously suffered back injuries. Dr. Demoz referred plaintiff to get x-rays by Dr. Mark Shapiro on December 30, 2009. Dr. Shapiro took x-rays of plaintiff's lumbar spine, pelvis, and cervical spine. Plaintiff was given naproxen for pain management.

24. Plaintiff filed a complaint against the officers with the Civilian Complaint Review Board and gave a statement; the charges were not substantiated.

25. Plaintiff has returned to court 6 times and has refused to take an adjournment in contemplation of dismissal. At no time during the incident did plaintiff commit any crime or give officers probable cause or reasonable suspicion that he was about to commit any crime. At no time during the incident did plaintiff attempt to use force against the officers or resist arrest in any way. Plaintiff's trial is currently scheduled for February 15, 2011 in Jury Part 1 in Kings County Criminal Court.

26. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

27. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

## DAMAGES

28. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a. Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b. Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

    c. Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

    d. Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

    e. Physical pain and suffering;

    f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety; and

    g. Loss of liberty.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983
False Arrest and False Imprisonment
(Against Officer Defendants)

29. The above paragraphs are here incorporated by reference.

30. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

31. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's

consent, and without probable cause or reasonable suspicion.

32. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

33. Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

34. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

35. All of this occurred without any illegal conduct by plaintiff.

36. The charges against plaintiff are still pending.

37. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

38. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## SECOND CAUSE OF ACTION
New York State False Arrest and False Imprisonment Torts
(Against All Defendants)

39. The above paragraphs are here incorporated by reference.

40. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

41. Defendants intended to confine plaintiff, plaintiff was conscious of his

confinement and did not consent to his confinement.

42. The charges against plaintiff are still pending.

43. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

44. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

<u>THIRD CAUSE OF ACTION</u>
42 U.S.C. §1983
Excessive Force
(Against Officer Defendants)

45. The above paragraphs are here incorporated by reference.

46. By using excessive force against plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

47. In addition, the officer defendants conspired amongst themselves to deprive plaintiff of his constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

48. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants

8

acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

49. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## FOURTH CAUSE OF ACTION
### New York State Assault and Battery Torts
### (Against All Defendants)

50. The above paragraphs are here incorporated by reference.

51. Upon approaching, pushing, throwing plaintiff to the ground, handcuffing and arresting plaintiff, defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

52. Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him without his consent.

53. Defendants used excessive and unnecessary force with plaintiff.

54. Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

55. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

## FIFTH CAUSE OF ACTION
### Negligent Hiring & Retention
### (Against City Defendant)

56. The above paragraphs are here incorporated by reference.

57. Upon information and belief, defendant City, through the NYPD, owed a duty

9

of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

58. Upon information and belief, defendant City, through the NYPD, owed a duty of care, to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

59. Upon information and belief, defendant officers were incompetent and unfit for their positions. Defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous.

60. Upon information and belief, specifically, defendant officer Vincenzo DiMartino used excessive force on July 20, 2009 against David Boyd, causing injuries including a head gash requiring staples. This incident was investigated and a notice of claim was filed within 90 days of the incident. The City of New York failed to take any action to punish, deter, more closely supervise or preventing similar instances of excessive force from happening again by defendant DiMartino. This failure by the City of New York, through DiMartino's use of excessive force against plaintiff, caused plaintiff's injuries on December 19, 2009.

61. Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

62. Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

### SIXTH CAUSE OF ACTION
### MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

63. The above paragraphs are here incorporated by reference.

64. The City is liable for the damages suffered by plaintiff in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

65. The aforesaid event underlying plaintiff's factual allegations was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

66. The City has been alerted to the regular use of false arrests by its police officers, through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared to $80 million in 2008.[1] In the past

---

[1] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[2]

67. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

68. Defendant Officer Vincenzo DiMartino has been named as a defendant in another excessive force and false arrest lawsuit pending in the Eastern District of New York, "David Boyd v. the City of New York, et al" Docket No. 10-CV-4078, filed September 7, 2010. Upon information and belief, there is no database through which officers with multiple lawsuits are tracked. Similarly, there is no way of tracking how much individual precincts, like the 75th precinct, account for civil rights lawsuits.

69. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police

---

[2] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

department action against officers. Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

70. The City is aware that the misconduct includes making false statements in accusatory instruments, to prosecutors and to investigators in order to justify false arrests. In 2008, more than half (51%) of the summonses issued by NYPD officers were dismissed for legally insufficient evidence. Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or quotas, resulting in the violation of innocent New Yorker's civil rights.[3]

71. The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding

---

[3] See WABC's Jim Hoffer's three installments (March 3, May 23 and May 25, 2010) on NYPD quotas available at http://abclocal.go.com/wabc/story?section=news/investigators&id=7461355 last visited May 26, 2010. See also "The NYPD Tapes" series by Village Voice reporter Graham Rayman, available at http://blogs.villagevoice.com/runninscared/the_nypd_tapes/ last visited on December 9, 2010.

misconduct by an officer.

72. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. In 2002, the percentage of officers who were the subject of substantiated CCRB complaints who received no discipline was 47%; in 2007, it was 75%.[4] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions. This entire procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight mechanisms.

73. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

74. All of the aforementioned has created a climate where police officers and

detectives make lies to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

75. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

76. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

---

[4] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006"

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.  In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.  Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.  Awarding plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.  Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: December 21, 2010
Brooklyn, New York

TO:
City of New York
100 Church Street
New York, NY 10007

Police Officer Alexander Zeledon
Shield No. 17073
75th Precinct
1000 Sutter Avenue
Brooklyn NY 11208

Police Officer Vincenzo DiMartino
Shield No. 19954
75th Precinct
1000 Sutter Avenue
Brooklyn NY 11208

Respectfully yours,

*[signature]*

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
71 Nevins Street
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com